[Turner v. Merchants Bank.]

# Turner *v.* Merchants Bank.

126 397
127 369

*Bill in Equity to cancel Mortgage as a Cloud upon Title, and for an Injunction.*

1. *Usury by bank; what necessary for borrower to have usurious mortgage cancelled.*—Although under the criminal statute as it formerly existed, (Code of 1886, § 4140), a note and the mortgage securing it, which are discounted by a banker at a usurious rate of interest, are void in the hands of such banker, still, in order for the maker of the note and the mortgagor, or one claiming under him, to have the mortgage cancelled, it is necessary for him to pay or to tender to the banker the money actually borrowed with the lawful interest thereon; and a bill filed for such purpose, which does not offer to do equity, by making such payment or tender, can not be maintained.

The bill in this case was filed by the appellant, J. L. Turner, against the appellee, the Merchants Bank. The bill, as amended, averred the following facts: The complainant on the 9th day of September, 1896, recovered a judgment in the circuit court of Lauderdale county against her brother, George A. Leftwich, for the sum of $5,730.92 and costs of suit. Execution was issued on said judgment and levied on certain real estate and certain personal property in the bill described as the property of said Leftwich. At the time the said judgment was obtained, complainant knew that the defendant held a mortgage upon said real estate and also upon said personal property, both given by said Leftwich to secure one note of $900, which note and mortgage were executed on the 23d day of September, 1894, and duly recorded; but said note and the two mortgages were each void because said note and mortgages were a renewal of two notes, each for $500, one secured by a mortgage upon said real estate and the other by a mortgage upon said personal property, which two $500 notes were each discounted for said Leftwich by the defendant, which is a private banking corporation, on the 19th day of January, 1893, at an usurous rate of interest, in vio-

lation of the penal statute then existing. At the time of filing of the bill and at the time of the execution of said mortgages complainant was in possession of the said real estate by virtue of a deed conveying the same to her. Complainant caused said real estate and personal property to be advertised for sale under said execution, and at said sale she became the purchaser of the said real estate, and obtained a sheriff's deed thereto; and proceedings were pending to try the right to the personal property upon an affidavit and claim bond filed by the defendant in the circuit court. There was a small balance due to the defendant upon a judgment in favor of one A. J. Warren against said Leftwich, which had been transferred to the defendant, and constitutes a lien on all said property, which balance complainant offers to pay.

The prayer of the bill was that the mortgage held by the defendant on real estate be cancelled and set aside as a cloud on the title of the complainant, and that the defendant be enjoined from the further prosecution of the suit for the trial of the right of property, and that the mortgage on the personal property be cancelled as being void.

The defendants demurred to the bill on the following grounds: 1. That the complainant's remedy, if any, was at law. 2d. The penal statute was repealed prior to the execution of the mortgage under which the defendant claims. 3. The complainant was not authorized to set up a plea of usury in an affirmative action on behalf of her judgment debtor. 4th. That the complainant did not offer to do equity. The chancellor rendered a decree overruling this demurrer.

On the 13th of November, 1896, the defendant filed its answer, in which, as amended, it admits the rendition of the judgment against Leftwich in favor of complainant and the issue and levy of the execution. It admits that it held a note for $900 secured by two mortgages, one upon the real estate and the other upon the personal property described in the bill, dated September 23d, 1894, but alleges that said note and mortgages were delivered by Leftwich and discounted by it on the 24th day of September, 1894. It admits that it had

held the two notes for $500 each, one secured by a mortgage on the said real estate and the other by a mortgage upon the said personal property, but it alleges that the note secured by the personal property was delivered by Leftwich and discounted by it on the 27th day of January, 1893, and the note secured by the real estate mortgage was delivered by Leftwich and discounted on the 29th day of March, 1893, and after the repeal of the penal statute. It alleges that each of said notes have been fully paid and discharged, and denies that either of them in any way entered into or constituted any part of said $900 note, and denies that said notes were discounted at an usurious rate of interest. It admits that at the time of the filing of the bill it was proceeding by advertisement and sale to foreclose said September, 1894, real estate mortgage, and alleges that on the 2d day of November, 1896, it purchased said real estate at the mortgage sale at and for the sum of $750.

It alleges that, even if said two $500 notes, or either of them, were void and have not been paid, and, if said $900 note is given to secure the same loan they were given to secure, the penal statute was repealed February 23d, 1893, and the moral obligation on the part of Leftwich to return the money he had received constituted a sufficient consideration for the new note after the bar of the statute was removed; and further, that, if this is not true, then the statute was made for the benefit of debtors, and the avoidance of the debt because of its violation is a personal privilege, and can not be asserted by complainant.

It denies that at the time of the filing of the bill complainant was in possession of said real estate, and alleges that on or about the 10th day of October, 1897, and before the execution sale and after the law day of its said mortgage, it went, by its agents, upon the property and notified the persons occupying the same of its rights, and demanded possession; that said persons agreed with defendant to pay to defendant rents, if permitted to remain, provided defendant would make certain repairs; that defendant proceeded to make the necessary repairs and posted a notice on the premises warning all persons not to trespass thereon.

[Turner v. Merchants Bank.]

The answer also alleged that unlawful detainer suits had been brought against its tenants in the justice court of H. D. Smith by the complainant, and that said court has rendered judgment against its said tenants. It admits the execution sale of the real estate, and that complainant became the purchaser, and admits the pendency of the proceedings to try the right of property with reference to the personal property.

The respondent prays that its answer may be taken as a cross bill, and that the complainant may be enjoined from interfering with its possession. The other facts of the case are sufficiently shown in the opinion.

On the final submission of the cause on the pleadings and proof, the chancellor decreed that complainant was not entitled to the relief prayed for, and ordered the bill dismissed; and further ordered the temporary injunction issued upon the filing of the answer as a cross-bill be made perpetual. From this decree complainant appeals, and assigns the rendition thereof as error.

EMMET O'NEAL and W. J. WOOD, for appellant.—"A mere renewal of the old debt or change of securities between the same parties, will not purge the usury, and the mortgagee must make good his defense by clear and satisfactory proof that the second transaction was not a device to evade usury laws."—Jones on Mortgages, § 634; *Eslava v. Crumpton*, 61 Ala. 507. "A void contract can not be validated by subsequent ratification." *Shippey v. Eastwood*, 9 Ala. 198; *Butler v. Lee*, 11 Ala. 885; *Petit v. Petit*, 32 Ala. 288; *Armstrong v. Toler*, 11 Wheat. 258; 1 Story's Equity, 306.

"A contract founded on an act which a statute prohibits under a penalty is void, although the statute does not expressly so provide. The subsequent repeal of the statute without any saving clause as to penalties already incurred will not validate a contract made under the law in existence when the contract was made."—*Woods & Co. v. Armstrong*, 54 Ala. 150; *May, Admr. v. Williams*, 27 Ala. 268.

Under the express decisions of this court the contract in this case being in violation of a criminal

statute, was absolutely void, and no right or claim of
any kind could be derived from it. It was incapable
of ratification. Even if part of the consideration was
the old void contract, it rendered the entire contract
void.—*Pettit's Admr. v. Pettit*, 32 Ala. 308; *Robertson
v. Hayes*, 83 Ala. 281; *Moog v. Hannon*, 93 Ala. 503;
*Woods v. Armstrong*, 54 Ala. 152; *Shippey v. Eastwood*,
9 Ala. 198; *Butler v. Lee*, 11 Ala. 885.

JOHN T. ASHCRAFT, *contra.*—Usury is a personal de-
fense, and cannot be taken advantage of by a judgment
creditor; and it cannot constitute any ground for af-
firmative action. This is true of all contracts made
in violation of penal statutes.—*Baskins v. Calhoun*,
45 Ala. 582; *McGuire v. Boykin*, 5 Ala. 349; *Cain v.
Gimon*, 36 Ala. 168; *Fenno v. Sayre*, 3 Ala. 458 ( 479);
*McGuire v. VanPelt*, 55 Ala. 344; *Butts v. Broughton*,
72 Ala. 294; *Lee v. Stiger*, 30 N. J. Eq. 610; *Hooper v.
Edwards*, 18 Ala. 280; Bump on Fraudulent Convey-
ances, p. 249; Pomeroy on Equity Jurisprudence, §
937; *Green v. Kemp*, 13 Mass. 516; s. c. 7 Am. Dec.
169; *Thornhill v. O'Rear*, 108 Ala. 301; *Long v. Ga. P.
Ry. Co.*, 91 Ala. 521.

A court of chancery will not lend its aid to enforce
a penalty or a forfeiture, but will leave the complain-
ant to his remedy or defense at law.—*Cole v. Savage*,
10 Paige, 553; 1 Pomeroy's Eq. Juris., § 459; *Fanning
v. Dunham*, 5 Johns. Chanc. Rep. 122; *Post v. Dart*, 8
Paige, 639; *Williams v. Fitzhugh*, 37 N. Y. 1;
*Lea v. Cassen*, 61 Ala. 312.

The advance of the money, although the contract is
illegal, for usury, is a meritorious consideration, suffi-
cient to support a subsequent liability or promise when
the positive bar of the statute is removed. A man by
express promise may render himself liable to pay back
money which he had received as a loan, though some
positive rule of law or statute intervened at the time
to prevent the transaction from constituting a legal
debt.—*Ewell v. Daggs*, 108 U. S. 150; *Curtiss v. Leavitt*,
15 N. Y. 9 (98); *Pettit v. Pettit*, 32 Ala. 308; *Planters'
Bank v. Union Bank*, 16 Wall. 500; *Goetter Weil & Co.*

26

*v. Smith Bros.*, 104 Ala. 481; *Givin v. Simes*, 61 Mo. 335; *Flanagan v. Hyer & Co.*, 41 Ala. 132.

TYSON, J.—Complainant recovered a judgment against George A. Leftwich in the circuit court of Lauderdale county on the 9th day of September, 1896, for $5,739.92, upon which execution was issued and levied upon the real estate described in her bill and also certain personal property. At the execution sale she purchased the real estate and received from the sheriff a deed to it. The personal property was claimed by the respondent bank, and was delivered by the sheriff to the bank upon the execution by it of a bond, and was the subject matter of controversy in a cause pending in the circuit court for the trial of the right of property when this bill was filed. As to the real estate conveyed by the sheriff's deed, it is averred in the bill to be in the possession of the complainant. The purposes of the bill and the relief sought by it are to have certain mortgages executed by George A. Leftwich to the bank upon the lands cancelled as a cloud upon her title, and to enjoin the trial of the right of property and to cancel the mortgages and bill of sale given by Leftwich to the bank of the personal property.

We may as well dismiss from our consideration at the outset all questions relating to the personal property for the very obvious reason that the complainant was never in possession of it.

The attack made upon the mortgages held by the bank proceeds upon one proposition, which if unsound disposes of the rights of the complainant to maintain the bill. The proposition contended for is that the mortgages now held by the bank are simply renewals of former ones given by Leftwich to it when the criminal statute was in force making it a misdemeanor for any banker to discount any note, bill of exchange or draft at a higher rate of interest than eight per cent. *per annum*, not including the difference of exchange.— Code of 1886, § 4140. Conceding for the purpose of this case, that the complainant was in the possession of the land prior to and at the date of the filing of this

bill, and that the mortgages held by the bank are re-
newals of those executed by Leftwich to it, which were
discounted by it at usurious rate of interest, does it
follow that they are void in such sense as that they
may be cancelled at the instance of the complainant
without paying to the respondent bank the money ac-
tually borrowed by Leftwich with lawful interest
thereon?

It will be observed that the statute which was vio-
lated does not by its terms impose any penalty or for-
feiture upon the bank in favor of the mortgagor or any
other person, but simply denounces the act of discount-
ing any note, bill of exchange, or draft, at a higher
rate of interest than eight per cent. *per annum*, not
including difference of exchange, as a misdemeanor,
for which the banker may be punished at the instance
of the State, as other misdemeanors are punished. It
will also be noted that there is no express prohibition
in the language of the statute against the making of
usurious contracts, nor does the statute expressly de-
clare such contracts void. It is only by an implied pro-
hibition that they are declared by the courts to be void,
and the principle upon which such contracts are held to
be vitiated *in toto* is that they contravene a penal sta-
tute, and the enforcement by the courts of such con-
tracts when relief is sought upon them, would be in
derogation of a sound principle necessary to be main-
tained in order to uphold the supremacy of the law and
the dignity of the State.—*Moog v. Hannon* 93 Ala. 503;
*Wood v. Armstrong,* 54 Ala. 152; *Youngblood v. Bir-
mingham Trust & Sav. Co.,* 95 Ala. 521. However, in
order to determine that such contracts, and in this
case the mortgages, contravene the statute, it is indis-
pensable that the pleadings should allege in proper
form so as to raise the issue, and the proof should
show, that they are usurious—that the discount of the
note, bill of exchange or draft which they were made
to secure, was made by the respondent bank at a higher
rate of interest than eight per cent. *per anuum,* not in-
cluding the difference of exchange. This, of course,
would involve in a measure the question as to whether
the complainant stands in such relation to the mort-

gagee as that she can plead usury in the debt which Leftwich owes to the bank, if it were permissible for Leftwich to maintain the bill. But if Leftwich could not maintain the bill to cancel the mortgages as a cloud upon his title, because of their invalidity, then certainly this complainant cannot. For by no process of reasoning can her rights be greater than his.

The violation of the statute, as we have said, confers no rights, by the terms of the statute, upon any one. The contention is, however, that the mortgages being void as to Leftwich are void as against all the world. Conceding this to be true, how is the court to determine that they are void, and at whose instance? Certainly not at the instance of a stranger or intermeddler. But it is said that the complainant is not a stranger, but is the owner of the lands upon which the mortgages are ostensible liens. Again we may concede this to be true, and yet, the question suggests itself, whose title did the complainant acquire at the execution sale? The answer must of necessity be, she acquired only such interest as her debtor, Leftwich, had in the lands at the time of the sale—his title, subject to all liens or equities, of which she had notice, created by him and outstanding against it. Having purchased his interest, and only his interest, she must be held to have acquired no greater rights than he had to free it of encumbrances. If she be regarded as taking his place, as standing in his shoes, with respect to the lands, she must bear his burdens. She acquired the lands *cum onere* of every right, claim or equity against them, of which she had actual or constructive notice.

It will be well here to note that this is not a bill to redeem. There is not an allegation in it which in the remotest degree recognizes the validity of the mortgages owned by the bank, but its entire superstructure is erected upon the assertion, as a basis, that the title claimed by the bank is a nullity by reason of usury in the transaction.

The manifest purpose of the statute, invoked by the complainant in this case to have the mortgages declared void, was to protect borrowers against the greed of the lender, if a banker, and to punish the banker

for its violation.   But it cannot be said to be more
potent in its effect upon a note discounted in violation
of it, than where a note is taken in violation of a stat-
ute which expressly prohibits the charging of usury or
a statute which expressly imposes as a penalty the for-
feiture of the entire debt evidenced by the note, or a
statute expressly declaring void all notes or contracts
tainted with usury.   The fact that the statute is a
penal one, does not render the contract any more in-
fectious because taken in violation of law, than if taken
in violation of a statute prohibiting the taking of it.
In both cases it would be absolutely void.   If void, it
cannot be more void or most void.   It must be either
valid, voidable or void.

Having shown that the complainant's rights can in
no aspect of the case under consideration be greater
than those of Leftwich, how would the case stand, had
the bill been filed by him?   Bearing in mind that af-
firmative relief is being asked of a court of equity on
account of usury in the transaction, and the invalidity
of the mortgages is not being set up as defensive mat-
ter, in defense of affirmative relief sought by the bank,
the case falls fairly within the maxim that "he who
seeks equity must do equity."

Under the usury laws as they existed in England
during the reign of Elizabeth, the statutes not only
made the contracts void, but also made it a crime to
take usury.   These penal statutes against the taking of
usury remained in force until 1813, as also did the
statutes making the contracts void.—13 Elizabeth,
Ch. 8; 17 Geo. III., Ch. 26; 53 Geo. III., Ch. 141.
Viner, in his Abridgment (Vol. 22, p. 315), which was
written prior to 1756, in speaking of usury and in what
cases the relief would be given, says this: "Though
the party submits to the oppression, yet he is not *par-
ticeps criminis;* but there is no reason why he should
profit by it, if he recovered [received] what was really
lent.   But the question is, what measure a court of
equity should go by in this case; and though this court
will not differ with the courts of law in construction
of what is the law, yet in application of the rules, as
well as proceedings, it will differ.   The direction of the

act is, that none shall take more for the loan of money than 6 *l.* per cent., that is the thing principally guarded against by the statute; and the other clauses by which the contract is made void, and the party made subject to a penalty, are to enforce obedience to the law, and to prevent the practice [of taking usury], but this court is not for criminal proceedings; and as to those the party must take his remedy in a proper court; but if there be a bond or a mortgage and a suit for the recovery of the money due thereupon, the defendant may plead the usurious contract as well in this court as at law, and avoid the contract."

While these statutes were in force, many cases arose in the courts of England upon bills filed by the makers of contracts seeking to have them cancelled upon the ground of illegality. It was uniformly held that the complainant in his bill should offer to pay the sum borrowed and legal interest thereon.

In *Henkle v. Royal Assurance Co.,* 1 Vesey, 320, Lord HARDWICK, in an opinion rendered in 1749, in speaking of illegal contracts, said: "But one exception occurs in these cases, and in which equity differs from the common law; for generally the rule is the same, only equity adheres a little stricter to it: and that is the case of *usury,* in which equity suffers the party to the illicit contract to have relief. But that depends on a distinct reason: that whoever brings a bill in the case of *usury* must submit to pay principal and interest due, on which the courts lay hold and will relieve; with this further reason, that is, court considers usurious contracts in somewhat a different light from what the law does, which considers them upon the foot of the statutes: but this court as a fraud and advantage taken on necessitous persons."

After an interval of more than sixty years, Lord ELDON, in *Ex parte Scrivener,* 3 Vesey & Beames's Rep. 14, said: "At law you must make out the charge of usury; and in equity you cannot come for relief without offering to pay what is really due."

In *Scott v. Nesbitt,* 2 Brown Ch., 642, we have the strong observation of Lord THURLOW: "I take it to be a universal rule," he observes, "that if it be necessary

for you to come into this court you must do it upon the equitable terms of paying the principal money really due, with lawful interest." See also *Mason v. Gardiner*, 4 Brown's Ch. 436; *Ex parte Skip*, 2 Vesey Sr. 489; *Benfield v. Solomons*, 9 Vesey, Jr. 84.

This seems also to be the universal doctrine of the American courts. In *Wilson v. Hardesty*, 1 Md. Ch. Dec. 66, the court said: "But, notwithstanding the language of the act of 1704 [which provided that all bonds, contracts and assurances whatever which reserved a rate of interest greater than six per cent. shall be utterly void, and also made it a penal offense to take more than the legal rate of interest.—Dorsey's Laws of Maryland, Vol 1, p. 6] is so strong, it is very certain, that contracts within its provisions are not, under all circumstances, treated as merely void—for it is settled that if a party goes into a court of equity, asking relief against an usurious mortgage or contract, he must do equity by paying, or offering to pay, the principal sum and legal interest.—*Trumbo v. Blizzard*, 5 Gill & Johnson, 18. Nay, he is not even entitled to a discovery as to the usury, unless he offers to pay the principal debt, and legal interest.—*Jordan v. Trumbo*, 6 G. & J. 103. Courts of equity have, therefore, undertaken, upon a principle which seems to have met the approbation of the community, for it is one long since established, to give a reasonable sanction to contracts affected by usury, by refusing to relieve a party against them, unless he would himself do that, which the moral obligation arising from the receipt and appropriation to his own use of the money of another required him to do."

An examination of the 3 Rev. Stat. of New York, p. 72, published in 1858, and also 3 Rev. St., p. 2253, published in 1882, which were enacted in 1837, will disclose a most rigid prohibition against the taking of usury. The act contains twenty sections. It not only declares void all contracts in which usury is reserved, but it requires the lender, upon bill filed by the borrower, to make discovery as to usury, and makes it a misdemeanor, to be punished by a fine not exceeding one thousand dollars, or imprisonment not exceeding

six months, or both, for the taking of usury; and also punishes him in the event he swears falsely, under the pains and penalties of willful and corrupt perjury, and makes it the duty of the court to charge the grand jury especially to inquire into any violation of the provisions of the act.

In 1868 the Supreme Court of New York, in the case of *Williams v. Fitzhugh*, 37 N. Y. 444, upon bill filed to cancel a mortgage which secured six notes, aggregating the sum of $31,000, a portion of which indebtedness was usurious, the court said: "I think the right of the plaintiff to its surrender and cancellation is to be determined by our laws, and not by the laws of Ohio; and if the transaction, through which it was to become an operative security, gave to the defendant's testator no title to hold it as security by the law of the place where the contract was made and was to be performed, then the courts of this State should decree its surrender and discharge, upon such terms (if any) as they may properly impose. In short, it is a security given and received by the defendant's intestate in this State, in violation of the provisions of the statute of this State. Although it was received as security for notes not found to be usurious, it was none the less received in violation of the statute, for the reason that by its very terms it secured some notes which were usurious. It is to be observed that no complaint is made nor any claim of error is urged on this appeal that it was erroneous, upon the facts found, to pronounce the four notes dated July 1, 1854, to be usurious and void, and to direct their surrender. The question raised by the present appeal relates simply to that part of the decree which requires the surrender and cancellation, or discharge, of this mortgage, and not to that part which directs the surrender of the four notes adjudged usurious. The mortgage is void. No action can be maintained thereon in this State in any form, and it is a cloud upon the title to the lands of the defendant. Third, does it follow that the decree in this action, so far as it directed the surrender and discharge of the mortgage, was warranted by well established rules of equity applicable to the subject? It is a familiar doc-

[Turner v. Merchants Bank.]

trine in courts of equity that 'he who seeks equity must do equity,' and without that the court of equity will not extend its arm for the relief of the suitor. If he can protect himself, either in whole or in part at law, if he can defend when assailed, very well; he can decline any concession of the equitable rights of the adverse claimant and stand upon his legal position, it may be safe, or it may be in peril, but if he invoke equitable interposition he must come with clean hands and prepared to do whatever in the judgment of equity is fair and equitable to his adversary; else the court will not entertain him, but will answer, 'stand upon your legal rights, or come here and perform the just condition of equitable relief.' It cannot be doubted, therefore, that when a party comes into a court of equity to remove a cloud upon the title to his hand, he must do whatever is equitable that he should do, before the court will interfere. In that respect he stands in no other or better condition than he who comes to compel the specific performance of a contract to convey; he must come prepared to pay and perform all that by the conditions of the contract he was bound to pay or perform,—or than he who comes to set aside a conveyance obtained from him by fraud: he must come prepared to restore all that he has received as the consideration of such conveyance. And, on precisely the same ground, it was the well settled rule of courts of equity that he who came into that court to set aside a conveyance or other security as void, because given to secure a usurious loan, must come prepared to pay so much as he had in fact received. He might stand on his legal rights and defend any and every endeavor to compel him to pay, but if he invoked the aid of a court of equity to give him affirmative relief that court recognized his equitable obligation to refund what he had received.—*Rogers v. Rathbun*, 1 Johns Ch., 367; *Tupper v. Powell, Id.* 439; *Fanning v. Dunham*, 5 *Id.* 122, 137; *Morgan v. Schermerhorn*, 1 Paige, 544; *Fulton Bank v. Beach, Id.* 429; *Taylor v. Bell*, 2 Vern. 170; *Whitman v. Francis*, 8 Price, 616."

Under the usury statutes of North Carolina (1 Rev. Stat., published 1837), it was provided that no person

shall, directly or indirectly, take for loan of any money, etc., above the value of six dollars by way of discount or interest for the forbearance of one hundred dollars for one year, etc.; and that all bonds, contracts and assurances whatsoever for the payment of any principal or money to be lent, etc., upon or for any usury, etc., shall be utterly void; and that every person whatsoever, who, upon any contract, shall take, accept and receive by way or means of any corrupt bargain, loan, exchange, shift, or interest of any money, etc., shall forfeit and lose for every such offense the double value of moneys, etc., so lent, bargained, exchanged or shifted; the one moiety of all which forfeitures to be to the State, and the other to him or them that will sue for the same by action of debt in any court of record within this State.

In the case of *Ballinger v. Edwards*, 39 N. C. 449, RUFFIN, C. J., speaking for the court, said: "The statute is as binding in this court as at law. If indeed the borrower asks for assistance from equity, it may be refused, unless he deal equitably by paying the principal money borrowed and legal interest. But the lender has no ground on which he can come into and stand in a court of equity."

The statute of New Jersey against usury is substantially the same as that of North Carolina.—Stat. New Jersey, 1847, p. 795.

In *Ware v. Thompson*, 2 Beasley, 66, the Supreme Court of New Jersey said: "The bill contains no offer to pay the sum actually due, or that may be found due upon the bond. The rule is well settled, that where a party comes into a court of equity seeking relief against a usurious contract he must offer to pay the sum actually due."

Under the statutes of Arkansas (Dig. Ch. 90, § 7, p. 615) all contracts in which usury is reserved are void.

In *Ruddell v. Ambler*, 18 Ark. 369, the court, after quoting the statute, said: "It is said that when a statute makes the usurious contract void, or forfeits a part of the principal, or legal interest, by way of penalty, the creditor, of course, must lose this, for the

[Turner v. Merchants Bank.]

debtor may interpose this defence however inequitable
it may be. But if the debtor makes himself a plaintiff,
and seek relief against a contract for its usury, it is
held, in equity, that he must *pay, or tender* the whole
amount of *principal and legal interest.*"

In the case of *Teague v. Williams,* 6 Texas Civil
App. Rep. 468, appellants sought to have a deed made
by them set aside upon the ground that the considera-
tion therefor in part was the dismissal of a criminal
prosecution against them. The remaining portion of the
consideration of the deed was for money paid for the
property. It was held, that they could not be heard
in a court of equity to allege their own unlawful acts
as a ground for setting aside a settlement and con-
veyance when they do not offer to do equity by ten-
dering the purchase money received by them for the
property.

In *Manchester & Lawrence Railroad v. Concord
Railroad,* 66 New Hampshire, 100, it was held, where
a contract, illegal because prohibited by statute, has
been executed by one of the parties, the other will not
be allowed to retain its benefits and at the same time
set up its illegality.

Numerous other adjudications to the same effect
can be found in the decisions of other courts. The
same doctrine is announced in the text books. In Tyler
on Usury, 435, it is said: "In addition to the remedies
which the borrower has against the lender, at *law,* on
account of usurious interest and usurious transactions,
the common law, and in general the statutes enacted
against usury, give the party relief against usury in a
court of equity. There are certain rules, however,
which prevail in such cases in a court of equity which
do not, as a general thing, apply to a proceeding at
law. Unless a statute exists to the contrary, the prin-
ciples upon which a party to a usurious contract can,
in a court of equity, obtain relief against the usurious
premium are well settled. The *invariable* rule in
equity is, that a bill or other proceeding in equity to
set aside or affect a usurious contract, whether filed
for relief or discovery, or for both, cannot be main-
tained without paying or offering to pay the amount

actually loaned. Neither discovery nor relief can in *any case* be obtained in the court of chancery, or by proceedings in equity, without a repayment of the sum actually lent, with lawful interest, because the borrower cannot, in any case, or under any circumstances, be entitled to keep the money which he has actually received from the lender, and for which the lender has received no consideration. * * * And in some cases, where the form of the security was such as to enable the lender to collect it without a suit, either at law or in equity (as a bond and warrant of attorney, or a mortgage), the borrower, although he had competent evidence of the usury, still, as he had no opportunity, from the form of the proceeding, to avail himself of it at law, was compelled to file his bill, and ask relief in equity. In such a case, also, although he sought and required no discovery, a court of equity would not relieve him from the usurious excess, except upon the equitable condition of his repaying the sum actually loaned. This was the rule, not by reason of any express statutory provision, but according to the established principles upon which a court of equity always exercised its jurisdiction in granting relief. The court of chancery invariably exacted of the party who asked relief against a usurious transaction that he pay, or offer to pay, both principal and interest, as a condition precedent to the compelling of the defendant to answer and make discovery.

"This maxim principally applies to the party who is seeking relief in the character of a plaintiff in the court. Thus, for instance, if a borrower of money upon usurious interest seeks to have the aid of a court of equity in cancelling or procuring the instrument to be delivered up, the court will not interfere in his favor unless upon terms that he will pay the lender what is really and *bona fide* due to him. But if the lender comes into equity to assert and enforce his own claim under the instrument, there the borrower may show the invalidity of the instrument, and have a decree in his favor and a dismissal of the bill without paying the lender anything; for the court will never assist a wrong-doer in effectuating his wrongful and illegal

[Turner v. Merchants Bank.]

purpose."—1 Story Equity Jur., (13th ed.), § 64 e.
Mr. Pomeroy, in his great work on Equity Jurispru-
dence, states the doctrine to be: "Another remarkable
application of the principle is seen in the action of the
courts towards parties seeking its aid under the stat-
utes against usury. Wherever the statutes have made
usurious loans and obligations absolutely void, if a
borrower brings a suit in equity for the purpose of hav-
ing a usurious bond or other security surrendered up
and cancelled, the relief will be granted only upon con-
dition that the plaintiff himself does equity by repaying
to his creditor what is justly and in good faith due;
that is, the amount actually advanced, with lawful in-
terest; unless, indeed, the statute has gone so far as
to expressly prohibit the court from imposing such
terms as the price of its relief. The same principle has
been applied to a lender seeking the aid of the court to
reform a security tainted with usury. The case is en-
tirely different and another maxim governs its decis-
ion, when the lender sues in a court of equity to en-
force a usurious obligation. The borrower may set up
the defense and defeat the suit, without repaying any
amount. The rule extends to all cases where a party
seeks to have a contract set aside and cancelled on the
ground of its illegality in violating the provisions of
some statute; the court will require him, as a condi-
tion to its granting the relief, to pay what is really
due on the agreement, unless the illegality is *malum in
se,* or the statute itself prevents the imposition of such
terms."—1 Pom. Eq. Jur., § 391. See also 2 *Ib.* § 937;
Webb on Usury, § 343; *Green v. Kemp,* 13 Mass. 515.

There is a clear distinction between acts which are
*mala in se* which are generally regarded as absolutely
void in the sense that no right or claim can be derived
from them, and acts which are *mala prohibita,* which
are void or voidable, according to the nature and ef-
fect of the act prohibited.—*Ewell v. Daggs,* 108 U. S.
143, 150. Where the act is *malum in se,* neither party
to the contract can have any relief. Where it is *malum
prohibitum,* as in the case of usury, the lender cannot
enforce the contract, but the borrower can have relief
against it, notwithstanding he is *particeps criminis.*

He is not regarded as being *in pari delicto*. He commits no crime by agreeing to pay the usury. The crime is committed by the lender, and he alone is subject to prosecution.—*Pratt v. Short*, 79 N. Y. 437. In *Schermerhorn v. Talman*, 14 N. Y. 123, the court said: "There is no rule better established than that which refuses the active interposition of a court of equity in favor of one who is *particeps criminis;* but like most other rules, it admits of exceptions. There are certain cases where the party seeking relief, although *particeps criminis*, is not *in pari delicto*, to which it does not apply. This distinction seems to have been first taken by Lord MANSFIELD, in the case of *Smith v. Bromley.* The exception was there applied only to cases where the law violated was intended to protect one of the parties from particular acts of oppression or extortion by the other; as for instance the statute against usury. Subsequent cases, however, show that the principle is not confined to that class of cases. The next case in which the question arose was that of *Jaques v. Golightly*, 2 Wm. Bl. 1073. The plaintiff had paid to the defendants money as a premium for insuring lottery tickets, a transaction prohibited by statute, and the action was brought to recover it back. It was insisted for the defendant, that the plaintiff being *particeps criminis*, could not recover. But the action was sustained. BLACKSTONE, J., said it was not like the stock-jobbing act; 'because there *both parties* are made *criminal, and subject to penalties.'* *Browning v. Morris* was another case of the same kind. Lord MANSFIELD there draws the distinction between acts which are *mala in se*, such as bribery, and those which are merely prohibited by statute; and in the course of his opinion remarks that, 'it is very material that the statute itself by the distinction it makes has marked the criminal; for the penalties are all on one side; upon the office keeper.' A similar question afterwards arose in the case of *Williams v. Hedley*, where it was very elaborately examined by Lord ELLENBOROUGH, who confirmed the doctrine of the previous cases. The principle of these cases is so obviously just, that no argument seems necessary to sustain it. To say that in

every transaction prohibited by positive enactment, the parties concerned are necessarily *in pari delicto*, would in many cases be manifestly absurd; and the test adopted by Lord MANSFIELD and Mr. Justice BLACKSTONE, by which to determine the relative guilt of the parties, viz., to see upon which party the penalty is imposed, would seem to be just."

In *Browning v. Morris*, 2 Cowp. 793, Lord MANSFIELD said: "Where contracts or transactions are prohibited by positive statute, for the sake of protecting one set of men from another set of men; the one, from their situation and condition, being liable to be oppressed or imposed upon by the other; there, the parties are not *in pari delicto*, and in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract. For instance, by the statute of usury, taking more than 5 per cent. is declared illegal, and the contract void; but these statutes were made to protect needy and necessitous persons from the oppression of usurious and moneyed men, who are eager to take advantage of the distress of others; while they, on the other hand, from the pressure of their distress, are ready to come into any terms, and, with their eyes open, not only break the law, but complete their ruin." The same doctrine is held in *Williams v. Hedley*, 8 East, 378, also in *Smith v. Bromley*, 2 Doug. 670.

Blackstone, in Vol. 2, 455, says the taking of usury is not *malum in se*.

It is manifest from the fact that courts of equity in England and in this country, notwithstanding the existence of criminal statutes punishing the lender for their violation, have always extended aid to the borrower in freeing him from the obligation of usurious contracts upon condition that he does equity by repaying the money loaned and legal interest thereon, have not regarded him as being *in pari delicto*, nor have they regarded the usurious transaction as being *malum in se*. The act of the bank in this case in charging usury involved no moral turpitude, no moral wrong; independent of the statute it would have involved no crime. The consideration of the notes was

for money loaned, which cannot be said in any sense to be unlawful, wrong, or in violation of public policy. The wrong, if one was committed, was in charging for the use of the money loaned a higher rate of interest than the statute against usury permits to be taken. There is no element of *malum in se* in the transaction. So, then, the case is controlled by the principles which we have declared, and which are supported by the authorities cited.

The concessions which we have made in this opinion as to the fact of possession by the complainant of the lands at and prior to the filing of the bill and the fact that the mortgages were usurious, were only made for the purpose of the discussion indulged in by us. It is but fair to the respondent bank to say that each of these facts is controverted by it in its pleading and by the evidence introduced by it. We made these concessions for the purpose of simply showing that all the complainant's material contentions upon which rest the equities of her case may be conceded, and yet, she is not entitled to the relief she seeks.

What we have said covers all the assignments of error insisted upon in argument; and those not insisted upon, under the uniform practice that prevails in this court, must be treated as waived. It follows that the decree of the chancellor dismissing complainant's bill must be affirmed.

Affirmed.