# Lindsay *v.* United States Savings & Loan Co. *et al.*

*Bill in Equity to redeem Real Estate and to enjoin a Sale under a Mortgage.*

1. *Redemption from under mortgage; usurious contract; necessary for complainant to offer to pay legal interest.*—Before a mortgagor can maintain a bill to redeem from under a mortgage upon the ground that ᴜne debt secured thereby was a usurious contract, ɪt is necessary that the complainant in such bill should offer to do equity by the payment of the amount ascertained to be due under the mortgage, together with the legal interest thereon; and the provision in the statute, (Code, §2630), that a usurious contract "can not be enforced, either at law or in equity, except as to the principal," does not abrogate this rule or modify the equitable requirement. (HARALSON, J., *dissenting*.)

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellant, Henrietta A. Lindsay, against the United States Savings & Loan Company. The bill averred that the complainant had negotiated and consummated a loan with the defendant, which was a building and loan association, and to secure this loan, the complainant, together with her husband, executed to said defendant a mortgage upon certain specifically described real estate; and that this loan was made in the manner that was usual to the making of loans by building and loan associations and in accordance with the by-laws and regulations of said defendant. There was attached to the bill the note and mortgage given by the complainant to the defendant, and also a copy of the by-laws, showing the rules and regulations of said company. It was then averred in the bill that the agent of the defendant had represented to the complainant that the money was loaned

to the complainant at 6 per cent. interest, and believing this representation, she contracted to pay only 6 per cent. interest when she borrowed the money and executed her note and mortgage; that such representation was false, and instead of requiring the complainant to pay 6 per cent. interest she was required to pay interest at the rate of from 12 to 15 per cent. per annum, which was illegal and usurious. That for nearly three years she paid the monthly installments required by her contract before she discovered that the interest exacted by the defendant was usurious.

The transaction and the averments of the bill as originally filed are set forth at length in the report of the case as it appeared on the former appeal (120 Ala. 156), and it is unnecessary to set it out at length here. The eighth paragraph of the bill was as follows: "8. That your oratrix is able and willing, and hereby offers to pay to said defendant corporation whatever this court adjudges is fairly and justly due to it from your oratrix for and on account of said loan, and the interest thereon that it may be adjudged to be entitled to, and hereby offers to do equity in the premises as may appear to and be so adjudged by this honorable court." It was also averred in said bill that by reason of the complainant ceasing to pay the monthly installments after the discovery of the usurious interest exacted of her, and after she had offered to pay the amount due remaining upon the said mortgage indebtedness, with 8 per cent. interest, the defendant had declared that there had been default in payment of the mortgage debt as required by the contract, and was proceeding to foreclose said mortgage.

The prayer of the bill was for an accounting between the complainant and the defendant corporation, for the purpose of ascertaining the money justly due from the complainant after allowing the legal rate of interest, and that complainant be allowed to redeem the real estate she had mortgaged to the defendant, by the payment of the amount ascertained to be due thereon, and further that the defendant corporation and its attorneys be enjoined from foreclosing said mortgage. From

[Lindsay v. United States Savings & Loan Co. *et al.*]

a decree denying the relief prayed for by the complainant in her bill as originally filed, an appeal was taken to the Supreme Court. On this appeal, the decree of the lower court was reversed and the cause was remanded. After the remandment of the cause, the complainant amended her original bill by adding to the eighth paragraph the following words: "That complainant is advised by counsel, that since the filing of this bill, the chancery rule, requiring complainant in a bill seeking relief from a usurious contract, to offer to pay eight per cent. interest, has been abrogated and annulled by the adoption of the Code, 1896, of Alabama, and that she in equity is only required to pay back all the principal of the debt she created by borrowing said sum of the defendant corporation, and that she is entitled to have all the payments she has made on said loan * * * deducted from the principal, and then pay any residue, * * * which she hereby offers to pay."

Upon the final submission of the cause on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for, and could redeem the property upon the payment of the amount ascertained to be due upon the mortgage debt, together with the legal interest thereon. From this decree complainant appeals, and assigns the rendition thereof as error.

SAMUEL WILL JOHN, for appellant.—A borrower who has contracted to pay usurious interest can, under the statute, go into the chancery court and be relieved of that contract, without paying any interest whatever, because the language of the section is that usurious contracts can not be enforced either in law or in equity except as to the principal.—Code, § 2630. These provisions of the law are mandatory. *Brotherton v. Brotherton*, 41 Iowa, 112; *Danville v. Pace*, 18 Amer. Rep. 663; *M. K. & T. Trust Co. v. Krumseig*, 172 U. S. 351; *Lukins v. Hazlett*, 37 Minn. 441; *First Nat. Bank v. Plankinton*, 27 Wisc. 177; *Lehman v. Robinson*, 59 Ala. 235; *Dubose v. Dubose*, 38 Ala. 240.

[Lindsay v. United States Savings & Loan Co. *et al.*]

The contract in this case was usurious.—*United States S. & L. Asso. v. Falls,* 97 Ala. 417.

WHITE & HOWZE, *contra.*—A mortgagor who seeks relief in a court of equity against usury can not get relief unless he is willing and offers in his bill to do that which was just and right by paying the debt and the lawful interest thereon. This rule of equity has not been abrogated by including in the section of the Code the statement that usurious contracts "can not be enforced either in law or in equity except as to the principal."—Code, § 2630.

The appellee does not ask to enforce the collection of interest and, as we have seen, never could have done so. The court will of its own motion accept the proposition of the appellant to pay the debt with lawful interest, which is made in the bill in this case. If it had been stricken out, the bill would have been demurrable.—*Eslava v. Crampton,* 61 Ala. 507; *Eslava v. Elmore,* 50 Ala. 587; *Rogers v. Torbert,* 58 Ala. 523; *Garland v. Watson,* 74 Ala. 323.

SHARPE, J.—Prior to the adoption of the present Code the statutes relating to interest and usury declared with reference to usurious contracts that they "cannot be enforced except as to the principal." Accordingly in suits for the enforcement of such contracts wherever the defense of usury has been set up and sustained, courts of equity as well as of law have constantly refused assistance to the suitor except upon the assumption that the principal exclusive of all interest constituted the entire debt. The provision, however, was never construed as interfering with the equitable principle which requires that one who seeks equity must do equity, or as interdicting its application to a borrower who in the attitude of a complainant seeks relief from usury. In the numerous cases involving usurious mortgages extending from *Pearson v. Bailey,* 23 Ala. 537 to *Turner v. The Merchants Bank,* 126 Ala. 397, our courts have followed the generally prevailing and well settled rule that such

remedy will be afforded to a complainant only upon the condition of his paying the amount equitably due which is considered to be, the sum loaned with legal interest.

The authority of a court of equity to impose those terms is not conferred by statute, nor is it exercised for the purpose of enforcing any contractual right. "Such authority belongs to the court by virtue of its general equity jurisdiction; and unless a statute exists providing that the party may have relief without the interposition of those terms, the rule will be invariably enforced."—Tyler on Usury, 437.

The power of the legislature to prohibit courts of equity from applying the maxim in cases involving usury is undoubted, and the question before us is whether the change in the wording of the statute referred to, wrought by the adoption of the present Code has not effected such prohibition. The provision now is that usurious contracts "cannot be enforced either at law or in equity except as to the principal."—Code, § 2630. It is apparent that the insertion of the words "either at law or in equity" does not expressly affect the scope of the statute as it stood before the change.

It is insisted for appellant that some change in effect, as well as in words, was intended, and that unless the altered provision be construed as divesting courts of equity of the right to require such condition of borrowers, nothing has been accomplished by the alteration, and the doing of a useless thing must be imputed to the legislature. The assumed consequence does not follow. Statutes are often found in seperate enactments and in Code revisions as well which are merely declaratory of principles already recognized as existing at common law, or in equity, or which have grown out of the construction placed by the courts upon some previous statute; and it frequently occurs in the revision of statutes, that changes in their phraseology are made with no other intention than to render their meaning more definite and certain.

The case here under consideration involves a revision, and not the construction of a subsequent independent enactment upon the subject of a former one.

In *Landford v. Dunklin,* 71 Ala., on page 609, it is said: "No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes The language of the statute as revised, or the legislative intent to change the former statute must be clear before it can be pronounced that there is a change of such statute in construction and operation."

In *Bradley v. State,* 69 Ala. on page 322, the principle is thus stated: "In the amendment, or revision, or in the reenactment of statutes, changes of phraseology, the omission of words deemed superfluous, or the addition of words rendering the intention more clear, are not infrequent. The construction or operation of the statute is not varied because of such changes. Before the courts can pronounce that the law is changed, the legislative intention to change it must be evident; language must be employed, which is not susceptible of any other just construction." For the same doctrine see *Dudley v. Steele,* 71 Ala. 423; Sutherland on Stat. Con., § 256; Sedgwick on Con. Stat. pp. 229, 365.

The principle of construction above quoted applied to the present statute, forces the conclusion that the alteration was intended to and has effect only to declare a rule as applicable to courts of equity, which in those courts, had previously existed either by judicial construction of the statute, or upon the general but variable doctrine that equity follows the law; either of which sources of authority might have become a subject of dispute in the absence of a more definite statute. The change resulting from the revision imports no prohibition against the exercise of the right in equity to require that one who in the attitude of a complainant asks, not to enforce a contract, but to be relieved from a stipulation he has made to pay money, shall pay the borrowed money with legal interest as a condition to having such relief.

The bill does not attack or seek to rescind the contract because of misrepresentations made to her re-

[Lindsay v. United States Savings & Loan Co. *et al.*]

specting the required rate of interest. Upon the ground of usury alone the complainant has sought and obtained relief. To hold that in doing equity she should pay less than the legal rate because her obligation was bounded by the mortgage stipulation for six per cent. interest on the loan proper, would be in effect to hold that no usury existed—a result which would be inconsistent with the right to any relief.

Affirmed.

HARALSON, J., *dissenting.*—On a former appeal in this case, following the former decision of *Falls v. U. S. Savings, Loan & Building Co.,* 97 Ala. 417,—identical in its legal aspects as to the transaction here involved,—it was held that the contract was usurious, a rate of interest exceeding 8 per cent. having been received.—*Lindsay v. U. S. Savings & Loan Asso.,* 120 Ala. 156. The chancellor in his opinion on the trial below says: "It is alleged and shown, that the contract contained in the mortgage, or the loan, is usurious," and this is not denied by the defendant. He also says: "The sole question now for determination is, 'Does the present Code, by section 2630, abrogate the long established rule of courts of equity, which requires a borrower, coming into such court to have a usurious contract purged of illegal interest, to pay the amount borrowed with legal interest?'" That section reads: "All contracts for the payment of interest upon a loan or forbearance of goods, money, things in action, or upon any contract whatever, at a higher rate than is prescribed in this chapter are usurious, and cannot be enforced either at law or in equity, except as to the principal." In the former statutes, the words "either at law or in equity" did not appear, and were added when the Code of 1896 was adopted. On the 19th December, 1898, the complainant amended her bill, by setting up this amendment of said section, as relieving her from liability to account in the cause for anything more

than a payment of the residue of the principal unpaid, and to have all the payments she had made deducted from the principal. Before this amendment, as appears, the statute simply provided, that no usurious contract could be enforced except as to the principal; and this provision against usury was not limited as to its enforcement to courts of law, but applied also to courts of equity on a bill filed to enforce the usurious contract. A bill filed to enforce the contract, was necessarily prosecuted by the lender. It was further held, that where one borrowed money at a usurious rate of interest, and gave a mortgage to secure it, and afterwards resorted to a court of equity for relief against the usury, he was denied relief, except on the condition of paying the principal and legal interest; but where the payee or mortgagee became the actor in a court of equity, he was required to offer to abate the whole interest, since the principal was all he was entitled to recover, and without such abatement, his presence in a court of equity, as held, was without clean hands. *Hawkins v. Pearson,* 96 Ala. 371; *Dawson v. Burrus,* 73 Ala. 111; *Uhlfelder v. Carter,* 64 Ala. 527; *McGehee v. George,* 38 Ala. 323; *Hunt v. Acree,* 28 Ala. 580. This rule of denying a borrower relief in equity against usury in a mortgage to secure the debt, was not by virtue of any statute on the subject, but originated with courts of equity as a condition prescribed by them, on which they would exercise their discretion in granting relief to the mortgagor or borrower. It was an invention of their own, and within their discretion as conceived, in the interest of equity.—1 Story's Eq. Jur. (12th ed.), § 301; *M. K. & T. Trust Co. v. Krumseig,* 172 U. S. 357. Judge Story states the distinction observed by a court of equity between the lender and the borrower thus: "The ground of this distinction is, that a court of equity is not positively bound to interfere in such cases by an active exercise of its powers; but it has a discretion on the subject, and may prescribe the terms of its interference, and he who seeks equity at its hands may well be required to do equity." 1 Story Eq. Juris., § 301. The Supreme Court of the

United States answering the question, Can a borrower of money upon usurious interest successfully seek the aid of a court of equity in collecting the debt, rendered void by statute, without making an offer to repay the loan with lawful interest, say: "Undoubtedly the general rule is that courts of equity have a discretion on this subject, and have prescribed the terms on which their powers can be brought into activity. They will give no relief to the borrower if the contract be executory, except on the condition that he pay to the lender the money lent with legal interest. Nor if the contract be executed, will they enable him to recover any more than the excess he had paid, over the legal interest." *Missouri, K. Trust Co. v. Krumseig*, 172 U. S. 351. Speaking further in the same case upon the exercise of this discretion, the court said: "It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute which is clearly within the legislative power, come in conflict with mere forms and modes of procedure in the courts, the latter must give way, and adapt themselves to the forms necessary to give effect to such rights. The flexibility of chancery methods, by which it moulds its decrees so as to give appropriate relief in all cases within its jurisdiction, enables it to do this without violence to principle. If one or the other must give way, good sense unhesitatingly requires that justice and positive rights, founded both on valid statutes and valid contracts, should not be sacrificed to mere questions of mode and form;" citing *Holland v. Challen*, 110 U. S. 15.

The chancellor construed the statute as amended, as having made no change in respect to this principle of equity procedure, and required the plaintiff to pay 8 per cent. on the loan. This construction proceeds on the ground, that the statute is directed against him who seeks to enforce the usurious contract; and inasmuch as a mortgagor or other debtor against whom a bill is filed to enforce the collection of a debt, is not one seeking to enforce its collection, he is not included within the technical provision of the statute, and stands

where he did before its amendment, with no rights thereunder to avoid paying the legal interest, which he may, in any case, as is urged, be required in a court of equity to pay, on a subsisting though usurious contract. If this were true, the amendment means nothing, and the legislature is put in the category of doing a useless thing. Amendments of statutes ordinarily suggest, and are *prima facie* evidence of a legislative intent to cure some defect in the statute amended. The supposed defect in this statute consisted in the fact, that under it, according to the construction placed on it by the courts, a borrower of money seeking, whether as plaintiff, or defendant, by the form of his pleading, in a court of equity, to avoid his usurious contract as to the interest, could not do so, and might be required to pay legal interest in addition to the principal. Without violent construction of the intention of the legislature, we may fairly assume that this was the defect they intended to reach by the amendment, and to make all usurious contracts voidable as to the interest, when properly pleaded by the debtor whether in a court of equity or law; for at last, a debtor by such defense is doing no more than preventing the enforcement of such a contract against him. What is the difference in principle between not allowing such a contract enforced at the instance of the lender, and in forbidding its enforcement at the instance of the borrower? It always did rest for enforcement, at law or in equity,— when the lender was proceeding,—upon the borrower, whether he objected or not; and but for this ancient rule in equity, the principle would have been as applicable in chancery to the one as to the other. To destroy that inequality of the parties in equity as was supposed, the statute was framed making the non-enforcement of usury apply in all courts, when invoked by the borrower, as well as by the lender. Not to so construe it, would seem to be a technical rather than a substantial ruling,—a *petitio principii.* The construction of the statute gives some field of operation to the amendment. A statute is to be so construed as that it may have effect agreeably to the intention of the

legislature. As has been well said, "Judges, in construing laws, are to inform themselves of the previous state of the law, and the mischief to be remedied, and make such construction as will advance the remedy and suppress the mischief. * * * The intention of the law is to be gathered from the cause of necessity of enacting it."—*Dubose v. Dubose*, 38 Ala. 241. It is, again, a familiar rule, that "a construction which leaves a sentence or clause of a statute no field of operation, should be avoided, if any other reasonable construction of the language can be given."—*Lehman v. Robinson*, 59 Ala. 235. The sole object of the amendment was to suppress usury, and leave no one to be victimized by it, when he seeks to avoid it,—passed in the interest of public policy, and for the prevention of extortion by the favored out of those not so fortunate as they.