# Barclift *v.* Fields.

## *Bill to Enjoin Foreclosure Sale.*

(Decided April 28, 1906. 41 So. Rep. 84.)

1. *Mortgages; Redemption; Usurious Interest.*—A borrower may redeem from mortgage sale without paying any interest, where the mortgage was usurious. Sec. 2630 of Code was amended by Gen. Acts 1900-01, p. 164, after the decisions of this court holding that § 2630 did not abrogate the equitable rule requiring a borrower seeking relief against a usurious mortgage to pay or offer to pay legal interest, in addition to the principal debt, and the amendment changed this rule.

2. *Constitutional Law; Obligation of Contract; Impairment.*—The mortgagee having no vested right in the equitable rule existing at the time of taking the mortgage, requiring the payment of legal interest as well as the principal sum before the debtor could obtain relief against a usurious mortgage, the amendment to Sec. 2630 of the Code, (Gen. Acts 1900-01, p. 164) is not an·impairment of the contract so as to render it repugnant to § 95, Constitution of 1901.

Appeal from Blount Chancery Court.
Heard before Hon. John C. Carmichael.

This was a bill filed by Fields to enjoin the foreclosure sale of certain land under mortgages executed by him to Mrs. Fields, and for the cancellation of the mortgage. It is alleged in the bill that Fields borrowed from Mrs. Barclift a certain sum of money and agreed to pay her 12½ per cent interest for the use of the money, and that he executed this mortgage to secure the same. He alleges that the payments made together with interest paid at the above rate is more than the principal sum borrowed. There is no offer in the bill to pay interest at the rate of eight per cent or to pay interest at all. The chancellor decreed that the sum paid including the usurious interest was equal to or greater than the principal sum borrowed and enjoined the sale and ordered that the mortgage be surrendered and cancelled, and from this decree, this appeal is prosecuted.

[Barclift v. Fields.]

SHUGART & BELL, for Appellant.—At the time this mortgage was executed, a mortgagor could not enjoin a foreclosure of the mortgage under the power without tendering back the actual aomunt borrowed with eight per cent interest.—*Turner v. Merchants Bank*, 126 Ala,. 397; *Lindsay v. U. S. S. & L. Co.*, 28 So. 717; *Ward v. Banks*, 30 So. Rep. 341.

At the time it was entered into, the contract was not void, but was voidable only and could be avoided only on the personal plea of the borrower, and if he sought to enjoin the sale, he must offer to do equity.—*Pearsons v. Bailey*, 23 Ala. 537; *Turner v. Merchants Bank*, 126 Ala. 397; *Stickney v. Moore*, 108 Ala. 590; *Lindsay v. U. S. L. Co.*, 127 Ala. 366.

Appellant's remedy was the most valuable part of her contract. The mortgagor was not compelled to pay more than legal interest,but he was by his own act and contract bound to pay that much.—*Osborne v. Johnson*, 99 Ala. 307.; *Eslava v. Compton*, 61 Ala. 507. The amendment to section 2630 of the Code of 1896, which was passed Feb. 23d, 1899, was further amended by the Acts of 1901. Both of these amendments impaired the obligation of the contract, and was violative of the Constitution.—*Edwards v. Williams*, 70 Ala. 145; *Adams v. Green*, 100 Ala. 218; *Howard v. Bugbee*, 24 Howard, 461; *Osborne v. Johnson, supra.*

There could be no usury without a corrupt intent.— Tyler on Usury, p. 103; *Bon v. Collier*, 54 Ala. 39 and cases cited.

M. L. WARD, for appellee.—The amendment to the Act changed the rule heretofore existing, requiring one before enjoining a sale under foreclosure to return the amount borrowed with legal interest and a plea of usury is as good in equity as in law, and the words of the statute clearly indicate the legislative intention that it shall apply to all contracts existing at the time of its passage as well as to those to be thereafter executed.

WEAKLEY, C. J.—The bill was filed for redemption from a mortgage executed on March 21, 1895, and also

sought relief from usurious interest upon the debt secured. There was no offer in the bill to pay interest at the regular rate, and the decree relieved complainant from paying any interest. The law in force when the mortgage was executed declared that usurious contracts could not be enforced "except as to the principal."— Code 1886, § 1754. Under the law then and therefore existing it was settled that, in a suit by a lender of money for the enforcement of the contract to repay, either in a court of equity or law, where the defense of usury was set up and sustained, there could be recovery only of the principal, exclusive of all interest.—*Lindsay v. United States Savings & Loan Co.*, 127 Ala. 366, 28 South. 171, 51 L. R. A. 393. It was further held that the payee of a usurious contract, becoming the actor in a court of equity, must always remove the taint by an offer to abate the whole of the interest, since the principal was all he was entitled to recover; and, without an offer in his bill to abate the whole interest, the lender could obtain no relief.—*Hawkins v. Pearson*, 96 Ala. 369, 11 South. 304, and authorities there cited. On the other hand, the law was well understood to be that, when the borrower upon such usurious contract sought relief in a court of equity, he must, according to the principles governing that court in granting relief, offer to pay the amount equitably due; that is, the sum borrowed with legal interest.—*Turner v. Merchants' Bank*, 126 Ala. 397, 28 South. 469.

Section 2630 of the Code of 1896 so amended the corresponding section of the Code of 1886 (1754) as to declare that contracts for the payment of interest at a higher rate than that prescribed could not be enforced "either at law or in equity," except for the principal. The purpose and effect of this amendment or revision, whereby for the first time it was expressly declared that usurious contracts were not enforceable in equity as to any interest, were considered by this court in *Lindsay v. United States Savings & Loan Co.*, supra, and it was there held by a majority of the court that the new provision had not accomplished the destruction of the equitable rule requiring the borrower, seeking relief in

equity, to pay the principal of his debt and legal interest, but that the amendment was merely declaratory of the existing law, which prevented a lender at a usurious rate from recovering any interest in a court of equity, when he was the actor in that tribunal. By an act approved February 23, 1899 (Gen. Acts 1898-99, p. 39) the Legislature amended section 2630 of the Code in a particular not involved in this case; and thereafter, on March 4, 1901 (Gen. Acts 1900-01, p. 164), enacted a statute amendatory of the act of February 23, 1899, whereby it was further declared, by way of addition to the provisions of section 2630 of the Code, as follows: "Nor shall the borrower of money at a usurious rate of interest ever in any case be required to pay more than the principal sum borrowed." It cannot be doubted that this declaration was inserted in the statute for the purpose of meeting the decision of the majority of this court in *Lindsay v. United States Savings & Loan Co.*, supra, and to conform the law to the views of Justice HARALSON in his dissenting opinion in that case. Stated precisely, the intention of the Legislature was to abrogate the rule, the creation of the equity court, that a borrower, seeking relief against a usurious mortgage by a bill filed in the chancery court, must offer to pay legal interest, in addition to the principal debt, and to authorize him to redeem without paying any interest; and it may be that wider scope than this may be found for the amendment in other cases as they may arise. The chancellor gave this operation and effect to the act of 1901, and applied the act to a mortgage taken before its passage upon a bill thereafter filed. It is not denied that the intention of the Legislature was to alter the pre-existing law, as above declared; but the contention of counsel for appellant against the decree of the chancellor is that the act of 1901 cannot be constitutionally applied to a pre-existing mortgage, for the reason that such application would be violative of the provision that "there can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement."—Const. 1875, art. 4, § 56; Const. 1901, § 95. The argument is that, inasmuch as the mort-

gagee had a remedy, by a sale under the power, to collect the debt secured, which could only be restrained by injunction out of the chancery court, and since the injunction could not be obtained without offering to pay legal interest, therefore the act of 1901 impairs or destroys a remedy for the enforcement of the mortgage contract, within the meaning of the section of the Constitution just quoted.

We are of opinion the contention cannot be successfully maintained, and that it rests upon a misapprehension of the true principles involved. Under the law as it existed when the mortgage was taken the agreement to pay usurious interest was illegal, and the mortgagee could not collect any interest, when employing the remedy by suit, either at law or in equity, if the mortgagor interposed the defense of usury. The contract stipulating for a greater rate of interest than eight per cent. was tainted with an evil and wrongful intent.—*Hawkins v. Pearson,* 96 Ala. 369, 11 South. 304. There was no contractual right to recover any interest, and that was so because the contract, to the extent of all interest was offensive to the policy and positive mandate of the law. Nor was the authority of the court of equity to impose terms upon a borrower seeking its aid conferred by statute, nor "exercised for the purpose of enforcing any contractual right."—*Lindsay's Case, supra.* The rule that one asking equity must do equity was but the invention of that court of chancery for regulating its own procedure. "The power of the Legislature to prohibit courts of equity from applying the maxim in cases involving usury is undoubted," as Justice SHARPE declared in the prevailing opinion in *Lindsay's Case;* and we do not see that the Legislature owed the mortgagee, claiming under a contract *pro tanto* illegal, any constitutional duty to preserve the rule of equity procedure for her benefit, to the end that she might realize the usurious interest, or even legal interest, by a sale of the mortgaged property under the power of sale. Redemption from a mortgage before foreclosure, upon paying the debt secured, has always been allowed by courts of equity. The valid legal debt in this case was the prin-

[McLeod, *et al.* v. McLeod.]

cipal sum borrowed and no more. At no time could the mortgagee have collected more than that sum by suit in any court against the mortgagor's will; and the remedy for the collection of the legal debt by suit is in no way altered or affected by the act of 1901. The insertion of a power of sale in the mortgage did not impart validity to the agreement to pay usurious interest; and, notwithstanding the power of sale, the contract remained legal only to the extent of the principal borrowed.

The mortgagee had no vested right in the rule of equity pleading and practice, and cannot complain that its abrogation by the law-making power has enabled the mortgagor to have relief without paying any interest. The law existing when the loan was made and the mortgage taken declared the contract could not be enforced except as to the principal, and to that extent it has been enforced. This preserves all the mortgagee's constitutional rights. The rule of equity practice was in no sense a part of her remedy. That the mortgagee was a widow, who loaned money to her brother-in-law, cannot alter the rules of law; and, if he choose to seek redemption without paying any interest, the court is bound to declare that the statute authorized him to pursue this course.

No other contention is pressed for a reversal of the decree than that already disposed of, and, of consequence, the decree must be affirmed.

Affirmed.

HARALSON, DOWDELL, and DENSON, JJ., concur.