COREY *v.* HOOKER.

W. L. F. COREY AND WIFE v. S. T. HOOKER AND Z. V. HOOKER.

(Filed 22 March, 1916.)

### 1. Injunction—Mortgages—Foreclosure—Nonsuit—New Action.

Where a mortgagee brings suit to foreclose his mortgage he has the right to take a voluntary nonsuit; and where this is done without exception, and the defendant in that suit brings suit to obtain a perpetual injunction against the foreclosure for alleged usury, and foreclosure is not asked by the defendant in the present suit, the defendant may not be regarded as seeking the aid of the court by legal proceedings to foreclose and have their rights adjusted, as in continuation of the former action.

### 2. Usury—Contracts—Equity—Payment—Notes.

It is necessary, to maintain an action for the penalty of taking usury for a loan, that the usurious interest should have been paid in money or money's worth by the plaintiff, who sues in equity, and the mere giving a note for the usurious amount is insufficient.

### 3. Usury—Equity—Injunction—Payment of Legal Interest.

A suit to perpetually enjoin the foreclosure of a mortgage is one seeking the aid of a court of equity, requiring that the plaintiff return the money actually received, with interest; and where the defendant waives the usurious part of the contract the plaintiff may not maintain the position that the defendant is not entitled to his legal rate of interest, and the relief he thus seeks will be denied.

### 4. Usury—Equity—Injunction—Taxation—Solvent Credits—Listing for Taxes—Tender of Payment.

In this action to perpetually enjoin the foreclosure of a mortgage alleged to have been made upon an usurious contract the defendant does not seek to recover anything "by action at law or suit in equity," and the plaintiff's position that defendants may not exercise their power of sale for failure to list the note for taxation is untenable, especially when the defendant exercised his right to pay the amount of taxes into court.

### 5. Taxation—Solvent Credits—Indebtedness.

*Held,* in this case, that sustaining the defendant's exceptions was tantamount to findings in the lower court that the defendant's personal indebtedness exceeded the amount of the taxes on a note secured by mortgage, and the plaintiff's position that he cannot collect the note for failure to list it or foreclose the mortgage cannot be maintained.

WALKER, J., dissenting.

CLARK, C. J., concurring in the dissenting opinion.

APPEAL by plaintiffs from *Bond, J.,* at September Term, 1915, of PITT.

Civil action upon exceptions to report of referee. The court over-ruled all plaintiffs' exceptions and sustained defendants' exceptions, and made findings of fact and law and rendered judgment accordingly. The plaintiffs appealed.

*W. F. Evans, L. I. Moore, L. G. Cooper, Harry Skinner for plaintiffs. Harding & Pierce for defendants.*

BROWN, J. In this action plaintiffs seek to perpetually restrain the defendants from foreclosing certain mortgages under powers of sale therein contained, executed to Z. V. Hooker and F. C. Harding and as-signed by them to S. T. Hooker. An injunction to the hearing was granted, a reference had, and the case is now presented upon the facts and conclusions of law embodied in the final decree.

The admitted facts are that S. T. Hooker loaned to plaintiffs $12,000 in actual cash and received from plaintiffs their notes and mortgages in amount in excess of that sum made to Z. V. Hooker and F. C. Harding, which were assigned by them to S. T. Hooker; that the excess over the $12,000 represents "bonus" added in the notes. The court finds that S. T. Hooker, before advertising the property for sale, voluntarily re-mitted to plaintiffs all over the $12,000 in actual cash loaned plaintiffs and legal interest thereon, and that the defendants have never collected anything whatsoever on either of said notes nor received any money or other thing of value on any one of them.

It is contended by the plaintiffs:

1. That Z. V. Hooker in September, 1914, commenced an action against plaintiffs to foreclose these mortgages; that pending the trial at April Term, 1915, Z. V. Hooker submitted to a voluntary nonsuit, and that the effort of defendants to foreclose under the powers of sale is but a continuation of that action, and, therefore, the defendants Hooker in this action should be treated as if they were seeking the aid of the court by legal proceedings to foreclose and have their rights and equities ad-justed accordingly.

We are unable to see the force of this contention. Z. V. Hooker had the legal right to submit to the nonsuit, and that terminated that action, especially as Corey and wife, the defendants in it, took no exception. The right of a plaintiff to submit to a nonsuit before verdict is well set-tled. *Oil Co. v. Shore, ante,* 51. In the case at bar the defendants ask no aid from the court and do not seek to foreclose the mortgages by legal process.

2. The plaintiffs contend that under the facts of this case they are entitled to recover by way of penalty $8,650, being "twice the amount of such interest paid," and to have the said sum credited on the principal

of the notes. This contention is without merit. It is found as fact, and not denied, that plaintiffs have received in actual cash $12,000 and have never paid a penny in money or money's worth as interest or bonus. In *Rushing v. Bivens,* 132 N. C., 273, it is held that usury must be actually paid in money or money's worth before an action can be maintained therefor, and that giving a note for the usury does not amount to payment. In the opinion *Judge Connor* says: "We think before the plaintiff can maintain the action he must pay the usury in money or in money's worth; he has done neither; he has paid nothing. It is well settled that the penalty is not incurred by the charge of usurious interest; it is by the taking the usury that the party incurs the penalty. No action lies therefor until it is paid." To the same effect is *Riley v. Sears,* 154 N. C., 521; *Pritchard v. Meekins,* 98 N. C., 244.

It would be most extraordinary if plaintiffs, without having paid defendants one penny in money or its equivalent, could recover of them a penalty of $8,650 and have that sum credited upon the principal of their indebtedness.

3. Failing in that, plaintiffs contend that they are entitled to a perpetual injunction against foreclosure under the power of sale and to a cancellation of the notes and mortgages upon repayment of the principal sum of $12,000, without interest. The plaintiffs are borrowers, asking equitable relief. Such relief will be granted only upon condition of their doing equity by returning the money actually received, with legal interest. It has been repeatedly held by this Court that when a mortgagor brings an action to restrain the mortgagee from selling mortgaged property on the ground that the debt secured is usurious, an injunction will be refused if the mortgagee waives the usurious parts of the contract. Where the debtor comes into a court of equity and asks relief against a usurious contract he must pay the defendant the money justly due him, with legal interest thereon. *Manning v. Elliott,* 92 N. C., 48; *Purnell v. Vaughan,* 82 N. C., 134; *Ballinger v. Edwards,* 39 N. C., 449; *Beard v. Bingham,* 76 N. C., 285; *Simonton v. Lanier,* 71 N. C., 498; *Cook v. Patterson,* 103 N. C., 127; *Churchill v. Turnage,* 122 N. C., 426; *Owens v. Wright,* 161 N. C., 127.

This equitable and just rule prevails in practically all the States of this Union as well as in England. 39 Cyc., 1010. The fact that the statute declares all interest forfeited does not affect the operation of the rule. *Carver v. Brady,* 104 N. C., 219; *Cushman v. Sutphen,* 42 Ill., 255.

In reaching our conclusion we have followed the unbroken line of precedents in this Court for half a century, as well as the overwhelming weight of authority in this country as well as in England.

The Alabama court has gone so far as to hold that a statute providing that usurious contracts cannot be enforced either at law or in equity,

except as to the principal sum due, does not prohibit a court of equity in a suit by a borrower for relief against a usurious contract from granting such relief on condition that the complainant repay borrowed money with legal interest thereon. *Lindsay v. U. S. Savings Bank,* 127 Ala., 366; 51 L. R. A., 393.

4. Finally the plaintiffs contend that the defendants should not be permitted to exercise the power of sale in the mortgages, because they have failed to list them for taxation. The statute relied on is copied and construed in *Hyatt v. Holloman,* 168 N. C., 387. The defendants are not seeking to recover anything "by action at law or suit in equity," and under the authority of that case this defense cannot avail plaintiffs. In any event, defendants would have the right to pay the taxes into court, as they have offered to do if liable therefor.

But the judge, in sustaining all of defendants'. exceptions and finding the facts as contended for by them, has practically determined that the notes and mortgages are not liable for taxation, as defendants' personal indebtedness exceeded them in amount.

Upon a review of the record, the judgment of the Superior Court is Affirmed.

WALKER, J., dissenting: Were this a question of general law, not affected by any statutory enactment, it may be that I would be constrained by some precedents in our Reports, even if thought to be erroneous in principle, to yield my silent concurrence to the opinion of the majority. I do not consider it proper to dissent in every case where my views may not strictly coincide with those of my brethren, whose greater learning and superior acumen I freely acknowledge; but whenever I believe that a vital principle is involved, or a right which is plainly given and guaranteed by statute is destroyed or put in jeopardy, then it is very proper, if not quite obligatory, according to my sense of the duty resting upon me, that I should state the grounds of my dissent, where I differ in opinion with the Court as represented by the majority.

On a former occasion, in *Owens v. Wright,* 161 N. C., 127, I expressed my views somewhat at length on the general question as applicable to the facts of that case, and the defendant in the present litigation may have taken some courage from what was decided therein and in one or two previous cases, and have supposed that however gross the usurious nature of the transaction may be, he would, at last, have everything to gain and nothing to lose, as if he is "armed and equipped" with a deed of trust *and a power of sale,* giving him dominance and great advantage of the borrower, he will, at least, be compensated with what is miscalled "legal interest," that is, he will secure his loan with 6 per cent added to it, whether he succeeds in oppressing his helpless debtor or not. I cannot bring my mind to think that the Legislature intended any such thing, or

that it was contemplated that the ancient dictum of the chancellors, who were then invested with great discretionary power in molding their decrees, should abort the effort of legislation to ameliorate the condition of those whose impecunious and necessitous condition compelled them, at times, to appeal to the money lenders for assistance.

This case is a most striking illustration of the imperative necessity for construing the usury laws of our State according to their unmistakable terms, or at least in conformity with the plain intent of the Legislature in enacting them.    They were passed to protect the poor and needy from the exorbitant exactions of the usurer.    They are perfectly just to the latter, for they allow a fair return on his money.    In order to restrain him from demanding more from a man who is bound to give, or to suffer if he refuses to do so, it was not sufficient to declare that he should forfeit only the excess of interest, but it was the opinion of the Legislature that he should be made to incur a heavy penalty if he violated the statute, to the extent of losing *all* interest and being subject, besides, to a further penalty of double the amount of the interest paid.    But this beneficent purpose—and no one can reasonably doubt the justness of it—is entirely frustrated and set at naught if we, contrary to the evident intent of the statute, allow him to recover the principal and 6 per cent additional; and it matters little, or rather not at all, what is the form of the action in which he is permitted to do so, or whether he is on the one side of the litigation or the other.    The statute does not make this distinction, or any exception to its clear and positive mandate, that if he *charges* more than 6 per cent on his money loaned he shall never have any interest, or that the loan shall not bear *any* interest.    This we held in *Ervin v. Bank,* 161 N. C., 42, where *Justice Allen* so well and so emphatically stated the *law* of the statute. After reviewing the authorities, he thus concludes, at page 49: "As the renewals, according to these authorities, do not change the nature of the transaction, and interest is forfeited when usury is *charged,* the debt became, *after that time,* simply a loan of money bearing no interest."    (Italics used to stress important and vital words.)    For this proposition he cited *Smith v. B. and L. Assn.,* 119 N. C., 255, where it was said: "Where usurious interest is charged, all interest is forfeited, and the legal effect of the contract being simply a loan without interest, all payments, however made, must be credited on the principal, and, in addition, the borrower is entitled to recover, or have credited on the debt, double the amount of payments made as interest within two years prior to action brought."    Could there be a more direct and absolute adjudication upon any question than what is said in those two cases as to the "legal effect" of a note in which usurious interest is *charged?*    It is stripped entirely of all interest-bearing quality, and is exactly the same as if, by its very terms, it bore no interest at all; or, in other words, as if

the debtor had given his note, which is accepted by the creditor in these words: "I promise to pay you, for value received, but without interest, twelve months after this date, the sum of $10,000."

If the "legal effect" is that a usurious note bears no interest, by what reasoning or principle can the courts change this law as declared by the statute? Nothing but the dictum of the chancellors, that "he who asks equity must do equity," and that under the operation of this most excellent maxim of the law the mantle of its protection falls upon the usurer and restores to him that which the statute says he shall forfeit forever. With all due respect to them, if they would have said it in this day and time, I must think that this is a strange perversion of the maxim.

I cannot better answer this position than by using the language of the Court in *Mo. K. and T. Trust Co. v. Krumseig,* 172 Mo., 351, where it was said: "We think it a satisfactory reply to such a proposition that the complainants in the present case were not seeking equity, but to avail themselves of a substantive right under the statutory law of the State." That was a suit to enjoin defendants from enforcing a mortgage securing a debt bearing usurious interest, which is our case also. What boots it that the plaintiff enters the court by one door and the defendant by the other? They are both in the court to have their rights, not according to the mere sentiment or fancy of the judge, but according to the law as written clearly in the statute, that a note shall bear no interest where an excessive rate is charged thereon. Is not the defendant, in legal effect, demanding a recovery upon the notes when in answer to plaintiffs' bill of complaint he seeks to recover his principal, with interest? The plaintiff is trying to prevent him from violating the law to his injury, and instead of stopping him in his excessive demand, the Court restores to him what he has lost, or, more exactly, gives him a bonus or something he never had under the law, for resisting the plaintiff in the prosecution of his rightful claim to be protected against him. What more right has the Court to allow him any interest than to allow him all of it? for the law says he shall have neither the one nor the other—interest above the legal rate or interest at the legal rate.

There is also a maxim that "Equity regards the substance and not the form of a proceeding." 10 Ruling Case Law, par. 130. It looks at its real nature, and not so much at its form or the position of the parties. If defendant had been a plaintiff demanding the recovery of his debt and all interest which is charged in it, the result, it is admitted, would be a forfeiture of all interest; and, if he does so as defendant, the law is the same. It was so held in *Ervin v. Bank, supra,* quoting from *Brown v. Bank,* 169 U. S., 416, as follows: "The forfeiture declared by the statute is not waived or avoided by giving a separate note for the interest,

or by giving a renewal note in which is included the usurious interest. No matter how many renewals may have been made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied on, and the matter is thus brought to the attention of the court, lose the entire interest which the note carries or which has been agreed to be paid. By no other construction of that statute can effect be given to the clause forfeiting the entire interest which the note, bill, or other evidence of debt carries, or which was agreed to be paid, but which has not been actually paid."

Why should it make any difference how the statute is called to the attention of the Court?

The debtor alleges in his complaint that under the law he owes only the principal of the notes, but that the creditor has insisted, and still insists, that he must pay more than is allowed in order to prevent him from using his superior advantage, by reason of his having a power of sale (*McLeod v. Bullard,* 84 N. C., 516) and selling his home. He then appeals to the court to enforce the law and restrain its plain violation if this threat of the usurer is carried out. This right to restrain him is now a legal right, not to be vouchsafed only at the will or discretion of a chancellor, for we have none, under our system, and have not had any since 1868. The right to an injunction accrues to a party by virtue of the statute, Revisal, sec. 806, and being a statutory remedy, he is entitled to resort to it whenever he states a case within the provision of the law, and this right cannot be curtailed by compelling him to give up some other well defined statutory right as a condition to granting him the appropriate relief. He is not now dependent upon the grace or favor of a chancellor. Speaking to this point in *Lumber Co. v. Wallace,* 93 N. C., at p. 27, and referring to the abolition of the forms of actions, *Justice Merrimon* said: "In some other respects it (our procedure) facilitates and enlarges the scope of equitable relief that may be granted. This is so especially as to relief by injunction and the appointment of receivers. The provisions of The Code, secs. 338 and 379, in express terms invest the court with very large and comprehensive powers to protect the rights and prevent the perpetration, or the continuance, of wrong in respect to the subject-matter of the action."

The plaintiff in this case is not asking for any equity, and is, therefore, not within the range of the maxim requiring one who does seek equity to do it. He is not demanding as his relief that defendant be enjoined from doing an inequitable act, but an illegal, unlawful act; that he be not allowed by force of his power of sale to do indirectly, or *in pais,* what he cannot do directly or in the court, and thereby to appropriate something that does not belong to him and that he is forbidden by positive law to take or receive. The offer he made before the sale

included more than, under the statute, he was entitled to demand. The maxim had not come into play at that time, and his right to interest had already been lost; and it is to be noted that in this case and in his answer he demands payment of the amount of his note and 6 per cent interest and invokes the intervention and the process of the court to enforce his claim, and the court has actually given him a judgment in this action according to his demand for the same, declared the amount a lien on the land, and directed a sale thereof if the debt, and interest from the dates of the notes, 3 January, 1911, 17 June, 1912, and 10 January, 1913, are not paid by the plaintiff, which gives him in interest, roughly estimated, about $3,100, the principal being $12,000. Why should this difference be made between a judgment in favor of the usurer as plaintiff and one in his favor as defendant? The result in this case makes the right of the usurer to recover interest depend not upon the statute, but upon his relative position in a lawsuit. But the authorities are not all one way upon this question. There are courts which hold that the maxim has lost its magic and its force, and must give way to the plain terms of the statute, which restrict the power of the courts. *So. Home B. and L. Assn. v. Tony,* 78 Miss., 916; *Long v. McGregor,* 65 Miss., 70.

In *Barclift v. Fields,* 145 Ala., 264, under a statute not essentially different from ours, it was held that in a bill to redeem from a mortgage sale the debtor is entitled to relief without tendering or paying any interest, the debt being noninterest-bearing, and the form of action not being material. The Court said: "The rule that one asking equity must do equity was but the invention of that court of chancery for regulating its own procedure. 'The power of the Legislature to prohibit courts of equity from applying the maxim in cases involving usury is undoubted,' as *Justice Sharpe* declared in the prevailing opinion in *Lindsay's case;* and we do not see that the Legislature owed the mortgagee, claiming under a contract *pro tanto* illegal, any constitutional duty to preserve the rule of equity procedure for her benefit, to the end that she might realize the usurious interest, or even legal interest, by a sale of the mortgaged property under the power of sale. Redemption from a mortgage before foreclosure, upon paying the debt secured, has always been allowed by courts of equity. The valid legal debt in this case was the principal sum borrowed, and no more. At no time could the mortgagee have collected more than that sum by suit in any court against the mortgagor's will; and the remedy for the collection of the legal debt by suit is in no way altered or affected by the act of 1901. The insertion of a power of sale in the mortgage did not impart validity to the agreement to pay usurious interest; and, notwithstanding the power of sale, the contract remained legal only to the extent of the principal borrowed. The mortgagee had no vested right in the rule of

equity pleading and practice, and cannot complain that its abrogation by the lawmaking power has enabled the mortgagor to have relief without paying any interest. The law existing when the loan was made and the mortgage taken declared the contract could not be enforced except as to the principal, and to that extent it has been enforced. This preserves all the mortgagee's constitutional rights. The rule of equity practice was in no sense a part of her remedy. That the mortgagee was a widow who loaned money to her brother-in-law cannot alter the rules of law; and if he choose to seek redemption without paying any interest, the Court is bound to declare that the statute authorized him to pursue his course." This was approved in *First National Bank v. Clark,* 161 Ala., 497, an action to enjoin a sale under a deed of trust. In both of these cases the Court say that the former doctrine was a mere creation of chancery, and had no statutory, but merely judicial, sanction. In the *Barclift case, supra,* the Court very gracefully says, by *Weakley, C. J.,* that the law had finally been brought into harmony with the dissenting opinion of *Justice Haralson* in *Lindsay v. U. S. Savings and L. Assn.,* 127 Ala., 366, cited in the opinion of this Court. I would especially commend the opinion of *Justice Haralson* in that case to a careful perusal and grave consideration, for it contains an unanswerable argument in favor of the view taken by me. He there says that the object of the statute is to make usurious contracts void as to the interest, "when properly pleaded by the debtor, whether in a court of equity or law; for, at last, a debtor, by such defense, is doing no more than preventing the enforcement of such a contract against him. What is the difference in principle between not allowing such a contract enforced at the instance of the lender and in forbidding its enforcement at the instance of the borrower? It always did rest for enforcement, at law or in equity, when the lender was proceeding, upon the borrower, whether he objected or not; and but for this ancient rule in equity the principle would have been as applicable in chancery to the one as to the other." The object, he further says, was to destroy the inequality between the two parties in courts of equity and to give fair play to the statute, and that not to so construe it would seem to be a technical rather than a substantial view of the question, and to prevent the statute having effect agreeably to the intention." And again, returning to a general view of the statute, he says: "It is again a familiar rule that 'a construction which leaves a sentence or clause of a statute no field of operation should be avoided, if any other reasonable construction of the language can be given.' *Lehman v. Robinson,* 59 Ala., 235. The sole object of the amendment was to suppress usury, and leave no one to be victimized by it, when he seeks to avoid it, passed in the interest of public policy and for the prevention of extortion by the favored out of those not so fortu-

COREY *v.* HOOKER.

nate as they." He buttresses his position with this extract from *Mo. K. Trust Co. v. Krumseig,* 172 Mo., 351, which appears to cover the case as with a blanket: "It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute which is clearly within the legislative power, come in conflict with mere forms and modes of procedure in the courts, the latter must give way and adapt themselves to the forms necessary to give effect to such rights. The flexibility of chancery methods, by which it molds its decrees so as to give appropriate relief in all cases within its jurisdiction, enables it to do this without violence to principle. If one or the other must give way, good sense unhesitatingly requires that justice and positive rights, founded both on valid statutes and valid contracts, should not be sacrificed to mere questions of mode and form." *Holland v. Challon,* 110 U. S., 15.

It is said in 39 Cyc., at p. 1013, that "in a number of States the equitable rule requiring the borrower to offer payment of principal and legal interest as a condition of obtaining relief in equity against a usurious contract has been abrogated either wholly or in part. Thus in some States payment, or tender of the principal without any interest, still suffices; so, by virtue of special statutory provisions in other jurisdictions, it is not necessary for the borrower to tender or pay either principal or interest." The elaborate note sustains this statement in the text. The trend, almost like a resistless tide, bears strongly towards the doctrine that executes the legislative will, rather than the will of the chancellors. The net result (in Virginia) is said to be "that a borrower who seeks relief in equity against a usurious contract need pay only the principal." 39 Cyc., note 78; *Edmunds v. Bruce,* 88 Va., 1007. It was held in *Morrison v. Miller,* 46 Iowa, 84, disapproving a former decision: "We do not think that equity requires the payment of this sum, but rather that it would be a practical nullification of the usury laws to require it." It may be that our Legislature will now amend the statute, as has been done in many of the other States, so as to declare its intention in language that cannot be misunderstood and to bring the law into greater harmony with public policy as evidenced by the usury laws. See 39 Cyc., 1013, and notes 78 and 79.

I have discussed so fully the other features of the case in my dissenting opinion in *Owens v. Wright,* 161 N. C., at p. 133, that I deem it unnecessary that I should make further reference to them here. My conclusion is that the terms of our statute are strong enough to abolish the former rule that prevailed in courts of chancery, and were intended to do so, and that we should not follow precedents based on the chancellor's discretion rather than on the mandate of the Legislature in a matter about which it had plenary authority to declare what should be

the law. We have no right to add to defendant's recovery one cent beyond that which the law allows him, or to say that when the Legislature has said that he shall have the principal of the debt only, we will give that and the interest, in this case amounting to a large sum.

I will state, generally, without going into details, that there was more usury charged on this loan, perhaps, than on any heretofore brought into litigation, and that the violation of the statute was not only palpable but gross. This seems to be admitted. The plaintiff brought a suit to foreclose his mortgage, and when confronted with the danger of losing his interest, he withdrew from the court and got behind his power of sale, which he believed afforded a safe barrier against all attack that could jeopardize a fair and reasonable return for the loan. He gambled on the chance of winning all of his illegal exactions, but played a safe game and for a good stake, which he knew could not be lost. Whether the rule which the defendant now invokes will tempt others to experiment in the same way remains to be seen. It appears clearly to me that the statute was intended to prevent any such result, and to forfeit the entire interest where there is a usurious charge, in all cases; otherwise it will be a dead letter, as usurers generally protect their loans by requiring a deposit of collaterals or by other forms of security, and as the debtor will be driven to his remedy by injunction, the lender will always get, at least, 6 per cent of his loan as compensation for it.

What would be the effect of a tender by the debtor of the principal before the sale upon his right to enjoin the sale without paying any interest is not raised in this case, and, therefore, need not be discussed. A tender would prevent the exercise of the power (27 Cyc., 1455; *Capehart v. Biggs,* 77 N. C., 261), and, in order to avail himself of it by keeping it good, it would seem that the debtor should not be required to bring into court more than the amount legally due, that being the usual requirement.

Where a statute is plainly worded, expressing clearly the intention, it is always said that there is no room for construction, and the will of the Legislature is enforced according to its plain meaning. This rule applies here, and should have its full operation. The law does not regard the parties to a usurious transaction as *in pari delicto,* but the debtor is rather considered as *in vinculis,* being under the power and control of the creditor. 39 Cyc., 1018. His position, therefore, should meet with the favor of the courts.

CLARK, C. J., concurs in dissenting opinion of MR. JUSTICE WALKER, and adds:

The object of the statute is to protect debtors from oppression by imposing the penalty of the loss of all interest when usury is charged. The statute contains no exemption, and when the creditor has exacted a mort-

gage or other security the debtor needs the protection of the statute more acutely than when there is no mortgage. The statute should be construed according to its intent.

If the legislative intent is to exempt from the statute a creditor who has obtained a mortgage, the General Assembly should add a provision: "But when the creditor has obtained a mortgage or other security he shall be exempted from the penalty of the forfeiture of all interest upon payment of legal interest."

If, however, the legislative intent is that there shall be no discrimination in favor of a creditor whose loan at usurious interest has been secured by mortgage or otherwise, then the General Assembly should add to the statute the following provision: "The penalty herein provided of the forfeiture of all interest when usury is charged shall apply whether the creditor has secured the debt by mortgage or not."

Two members of the Court have repeatedly held that the latter is the legislative intent of the statute, which contains no exemption in favor of mortgages, *Owen v. Wright*, 161 N. C., 133; also, *Churchill v. Turnage*, 122 N. C., 426, and other cases; while three members have held to the contrary. An act of the General Assembly should determine the true legislative intent in this regard.